Our second case for this morning is Cisneros v. Lynch. We'll hear from Ms. Schaller when you're ready. Ms. Schaller May it please the Court, Alexandra Schaller for the petitioner. Legal standards matter, both before this Court and before the Board of Immigration Appeals. We ask this Court to consider the appropriate legal standards governing waivers of indemnizability. Congress expressed a standard in 1182 H1B, extreme hardship. The Attorney General had no authority to rewrite that standard using its discretion under H2. I don't see how he did, or she did, because the standard for violent or dangerous crimes applies to a pretty narrow subset of people covered by H1, right? That's correct. And so what's wrong with having this more demanding standard to say this is how we're going to exercise our discretion in this subset of particularly problematic aliens? The problem with that regulation, Your Honor, is that it disclaims the Attorney General's ability to consider the Congressional standard, extreme hardship, as a part of its discretionary analysis. Sorry? I don't follow that. So, in effect, the heightened standard as applied to violent and dangerous criminals under H2, the Attorney General cannot consider extreme hardship, the Congressional standard, as applied to that subset. Could the Attorney General adopt an order, a regulation that said certain crimes are just going to be off limits, I'm just not going to exercise my discretion in those cases in favor of the alien at all? I'm not sure whether or not the Attorney General could do that. I wonder whether that would be problematic, considering that the statute itself articulates that certain crimes are ineligible, like murder. But the Attorney General is supposed to use her discretion. That's correct. And we usually don't criticize agencies for trying to articulate or channel that discretion through regulations, right? That's right. And we would agree that the Attorney General absolutely enjoys broad discretion to enact regulations defining or supplementing Congressional standards. However, in this particular case, the standard replaces the extreme hardship standard in H1B. Except that the Attorney General herself doesn't think that it does, nor have the other circuits taken that position. I think they've seen the extreme hardship language in the statute to create a pool of cases. There are a bunch of, let's assume, some number of people who can show extreme hardship. They're all eligible for an exercise of discretion. But the Attorney General is saying, actually, I'm only going to exercise my discretion if, in addition to its being extreme hardship, it's somehow out of the ordinary. It's exceptional. It's unusual. You're kind of groping for words to get this. So there are going to be some people who have extreme hardship, but it's run-of-the-mill extreme hardship, if you will. I'm going to have to leave my children, or everybody will descend into poverty, or things like that that do happen when there's removal. But the Attorney General is saying, I'm going to exercise discretion only if this factor is shown. And she also is saying in her briefs here, at least, that it's not the only factor, and it doesn't seem to have been here. But I don't know unless – well, you have told Judge Hamilton that you don't think she could say, for example, even if it's extreme hardship, I'm simply not going to exercise my discretion for somebody who is a murderer or somebody who has committed repeated frauds against people or whatever, some extra undesirable trait. So I don't know. I think it's our job to try to see if the Attorney General's regulation can stand. And I think I would agree with that, Your Honor. I would say, however, that the H-2 discretion asking for a heightened – or a review of a petition under a heightened standard nullifies any review under the congressional standard. What if the Attorney General had never issued the regulation, but in her mind was exercising discretion only if the person could actually also show that the hardship was exceptional and unusual? Is that any better? I'm not sure that that's better, Your Honor. However, in that case, perhaps that would just be the Attorney General exercising a definition for extreme hardship. I think in this case, to create a different standard does not define the congressional standard. It replaces it. So you don't think there's any set of cases where somebody has shown extreme hardship that's not exceptional and unusual, and so they get turned down because they can't show this higher threshold? I think there have been cases that have so held. I would still say, however, that, in effect, H-2, with its heightened standard, as applied to violent and dangerous offenders, disclaims or prevents the Attorney General from considering the congressional standard with respect to the petitioner. The H-1 standard applies pretty broadly, correct? Yes. It would apply, for example, to crimes involving moral turpitude. That's correct. Which can include writing a bad check, right? It's a fairly low standard, right? And so I guess I'm still just having trouble understanding what's wrong with the Attorney General saying, well, out of all of these aliens who have a wide range of types of criminal histories here in the United States, where in cases of extreme hardship I can exercise discretion, I'm going to raise the bar, as Congress has invited me to, for this particular subset of violent and dangerous criminals. And I think that the Attorney General would enjoy discretion to, to use your words, raise the bar, but not where Congress has spoken with respect to a hardship standard already. But is that what she did? I mean, the 1212.7d, as Judge Hamilton is saying, applies only to cases involving violent or dangerous crimes. You wouldn't think that somebody who passes bad checks is a violent or dangerous criminal. They're not doing something that's good, but they tend to not be violent or dangerous. So why not have a higher standard? Why is that an abuse of the discretion Congress gave her? The abuse is only with respect to this particular regulation. The problem is that although the Attorney General, under H-2, does have discretion to enact regulations to define how it exercises its discretion, the Attorney General cannot rewrite one of the congressional standards using that discretion. See, we agree with you on that. I think the only thing we're exploring is whether, in fact, that's what she did. Did she rewrite or did she take a broad criterion, extreme hardship, and then start to break it down and say, well, you know, for the check writers, maybe that's all that's necessary, but for the violent people, you know, I'm going to look for something more compelling before I exercise my discretion. And, you know, is she trying to somehow structure her exercise of discretion? I think she is attempting to structure her exercise of discretion. However, the way that she has done it goes against what Congress has authorized in this area. And I don't think that it's saved by the fact that the Attorney General applied it specifically on this regulation to violent and dangerous offenders. I think it's still problematic because Congress issued the extreme hardship standard without defining beyond what 1182H1. It does not narrow to certain classes of applicants. And I don't think that the Attorney General could do that and apply a heightened standard where Congress spoke. So maybe you should talk a little bit about our case in Alley against Akeem because that as well, although it's a different regulation, the logic of that case seems also to go in favor of the Attorney General's regulation. We don't dispute the logic of that case or its holding. We believe government counsel asked this court to extend Alley to apply to this scenario, which involves a different statute. To put it most simply, I suppose, the statute at issue in Alley did not contain a hardship standard whatsoever. So there was no issue of rewriting or substituting a standard that Congress required. And that is different than in this case where, of course, there is a hardship standard which Congress requires. I'm not sure if the grounds for inadmissibility for a refugee are broader in that there isn't this hardship idea. Why that doesn't suggest that a heightened standard is actually more appropriate for the 212H cases, which are people who've committed a crime. Again, it's a narrow position that we take that in this particular case, this is the one thing that the Attorney General could not do, was to apply a standard different than the one that Congress set forth. The Attorney General could have done many things, I suppose, in a proper exercise of its discretion because, plainly, it does have broad discretion. But in this particular case, it rewrote a standard. It should not have done that. And I think that the Board's opinion in this case illustrates the problems with it. Does it seem sensible to you that the seriousness of crimes committed by the person in question is relevant? It is relevant. Absolutely, Your Honor. We still believe that the negative and the positive equities both warrant consideration in the Attorney General's exercise of her discretion, which leads me, I think, to talk about perhaps the Board's opinion a little more specifically. We argue whether or not this court, or assuming that this court deems the regulation at issue valid, the Board still misapplied it. In its opinion, the Board wrote that Mr. Cisneros was ineligible for a waiver because he did not show the heightened standard. At the very least, this seems to be a red flag that the Board conflated the two-step regulation procedure that it should have addressed separately. And Mr. Cisneros is entitled to consideration of his waiver of an admissibility under the appropriate two-step analysis. I agree with you. It's possible. That's certainly a way to read several key sentences of the Board's decision. But given that the Board went on to apply the discretionary standard, why wouldn't an error about eligibility be harmless? I believe that the error is not harmless because under this opinion, we can't tell what weight, if any, the Board gave to Mr. Cisneros' extreme hardship showing. And further, the Board gave additional errors in its opinion, most notably it left out material facts from its analysis that this Court has held as legal error under its opinion in Champion v. Holder. On that point, the Board refers here, although the respondent has several notable equities, the negative factors in his case far outweigh the positive. What notable equities do you think the Board was talking about here, given that it was reviewing a decision by an immigration judge granting discretionary relief? I think without articulating what those equities were, material factors needed to be considered, and it's unclear by not at least noting them whether or not the Board considered them. So do you think we should send this back for the Board to say, and we meant the death of his granddaughter and the echoing effects of that in the family and the risk that his ex-wife would become homeless, which was what the immigration judge had focused on? I do think that's why you should remand, Your Honor. For the addition of that sentence? I think that it's troubling that the immigration judge, considering those same factors, came out differently, and I think that the Board's opinion ignored those factors, which merited a favorable waiver. What were the other notable equities in his favor? In addition to the homelessness and the risk of homelessness to his ex-wife and the tragic circumstances involving the death of his granddaughter. Sure. Other positive equities would include the general financial aid that he gives in addition to not just his wife but to his children directly, as well as the emotional relationship that he has. There's pretty significant testimony during the removal proceedings from both the mother of the two. Sorry, but they'd already talked about the close relationship and the fact that he wasn't living with the daughters and he kept getting into trouble with the law and separating himself from them, and they'd already taken that into account, right? I believe so, although I would say, at least to that particular point, that he was away from them so often. Mrs. Cisneros, or his ex-wife, Melissa Cisneros, testified that even when he was away, he always made efforts to come visit. During his time in rehab, he would always come during weekends, would always send them money. So he appears to have maintained contact even in his sometimes absent periods. I see that my light is on. You can reserve your minute for rebuttal. That's fine. Thank you. Yes, Mr. Zidey? Good morning. Good morning, Your Honors, and may it please the Court. Imran Zadey for the Attorney General. Petitioner raises various arguments in this appeal, but the primary, the core challenge of their appeal, is that the regulatory hardship standard at 1212.7 is inconsistent with the hardship standard in Section 212H of the INA. Now, subject, of course, to this panel's questions, that is the challenge that I plan to focus primarily on today, and I have a few points to make about the additional challenges. Now, looking at the validity of the regulations, starting with the statute, as this panel's questions just made clear, Section 212H makes very clear that an individual can become eligible for the exercise of the Attorney General's discretion if they can show extreme hardship to a qualifying relative, and that's at 212H.1. But the statute at 212H.2 makes very clear that it is the Attorney General who then ultimately exercises complete and broad discretion to actually decide the waiver and, importantly, to set the standards that apply in exercising that discretion. So who's going to get a 212H.1 waiver who hasn't experienced exceptional and extremely unusual hardship? Who is going to, Your Honor? Well, so a couple things. First of all, at the 212H.1 stage, there's a couple different ways to even become eligible. Extreme hardship is just one. That's 212H.1b. That's the one that's at issue in this case. Under 212H.1a, there's what's called the rehab waiver. Somebody's crime is more than 15 years old. So those people, if they have not been subjected to the higher hardship standard, would not, unless there's some other discretionary factor that would weigh against them, they would not even be subjected to the heightened hardship standard. Even in this case, if you apply this 212H.1b, the one at issue here, if there's no violent or dangerous crime, then extreme hardship puts you in the field of play. As you described it, it brings you within the pool of applicants. But that still just subjects you to the Attorney General's broad discretionary decision as to whether to apply the waiver or not. No, I mean, I guess what I'm trying to explore, and I just need to be reassured, is that there is a meaningful difference. Because if this is really just a backhanded way of saying that the Attorney General is always going to require exceptional and extremely unusual hardship to, I suppose, the U.S. citizen, family members, or others, then that would cause me concern because the statute doesn't adopt that requirement. And a requirement of extreme hardship is not the same thing, as I said a minute ago, as a requirement of unusual hardship. No, that's certainly true, Your Honor, and I apologize. Perhaps the better and more direct answer is, well, first of all, it's only for that subset of criminals. And I think, as Judge Hamilton made clear. The violent or dangerous. Violent or dangerous. So I think, and so you will never see an analysis, or you should not see an analysis in a board's decision that applies that heightened standard  and found to be violent or dangerous. And that was the entire purpose. And that's a purpose, by the way, that this Court has upheld, and that Petitioner, I don't believe, disputes here. That a heightened waiver standard for violent or dangerous criminals is rationally related to a national immigration policy of not admitting aliens who pose a danger to society. That's beyond dispute. And, of course, underneath all of this has to be, I suppose, considered what falls within the scope of the term aggravated felony. It's actually expanded quite a bit over the years, if you follow it through. But I suppose aggravated felonies include what? The drug crimes, the moral turpitude, the violent crimes. Right. What else? Right. And that's the removability ground here, Your Honor. But what brought Mr. Cisneros under the, what required him to get a 212H waiver here was that his crime also was a crime involving moral turpitude. And that's not dispute. When he checked the box, I'm a U.S. citizen. Right. And so that's the ground here was a crime of moral turpitude. It's important, as this panel has already recognized, that this is. . . So why does that make him somebody who's committed a violent or dangerous crime? I mean, that's another one of their arguments. I thought it was the robbery here. Yeah, the bank robbery. No, it was the robbery, Your Honor. It's just that that robbery constituted an aggravated felony, which is what made him removal, but it also was a crime involving moral turpitude, which is under 212, and those are the inadmissibility provisions, and it is a waiver of inadmissibility that he is seeking here. So that same crime had two consequences for him. The bank robbery, though, not the checking. The bank robbery. Not the misrepresentation of U.S. citizens. Right. The bank robbery. That's exactly right. And that's where he says you really need to look at the facts of this bank robbery. If there's some kind of bank robbery that's actually non-threatening, which is, you know, maybe a stretch, but if there is a bank robbery that's non-threatening, he seems to have wandered in the bank from his bicycle, impaired by alcohol, gets $70 and wanders back out again. So it doesn't seem that bad. No guns, no nothing. Your Honor, that's true, and the Board frankly considered that. But I think the challenge specifically the petitioner makes here is that if you look at all these facts and circumstances and all these extenuating factors, that maybe he's not as culpable as he otherwise would be. Well, the question, though, is has he committed a predicate crime that's violent or dangerous? That's exactly right. And the Board is saying any bank robbery automatically is violent or dangerous because there's always a potential of something going awry, I suppose. That's exactly right. And what he's saying is, no, if the Board is going to reserve the right to look at all the facts and circumstances, which it seems to have done, then look at the facts and circumstances of my case. This bank robbery wasn't. And so if you can't get to violent or dangerous, you don't get to 1212.7, right? That's right, Your Honor. But respectfully, with your premise, the Board has reserved the discretion of the Attorney General and by her delegate, the Board has retained discretion as to how to make a determination as to whether a crime is violent or dangerous. And no court, none of petitioner's authorities support the proposition that they must apply, that the Board must apply a facts and circumstances test. In fact, some of the authorities very clearly, to the extent they say anything, say that a categorical analysis is all that is required. You can look to the elements of the offense, and if that leads you to the conclusion that a crime is violent or dangerous, that is more than enough. But the Board hasn't ever nailed itself down. I mean, we went through this for years before the Johnson case was decided, trying to decide whether various crimes were categorically crimes of violence or were they not crimes of violence, and back and forth we went using the categorical approach. The Board doesn't say that it's taking the categorical approach. It doesn't say it's taking – it sort of takes whichever approach it feels like taking under the circumstances, which is a little troublesome because why isn't that an all-the-facts-and-circumstances approach that he should have gotten the benefit of? Well, Your Honor, there's a little bit of a different determination here when you talk about a pure discretionary determination as to whether a crime is violent or dangerous. Again, the reason I keep pivoting back to the discretion is because it's a very important starting point in which to understand what exactly the Attorney General is defining here and how they're defining it and for what purpose. Well, I understand that, but let me be a little bit specific. The 11th Circuit said, you know, with respect to this matter of Gene case, Gene required neither a categorical nor a fact-based approach to determining whether a refugee's convicted renders him a violent or dangerous individual, but rather only an adequate consideration of the nature of the refugee's crime. So I don't even know what that means, you know. If it's not facts and if it's not categorical. I think the point in that case, Your Honor, is that either one of them can work so long as it considers. It's not that neither one of them should be applied in something else altogether, but it's that no particular methodology is required, and this Court has upheld that exact approach, by the way, in what I think is a helpful analogy, which is the particular serious crime determination. That will disqualify an alien from applying for asylum or withholding of removal. Sometimes a crime is an aggravated felony, which will per se disqualify you from asylum, or an aggravated felony with a sentence of five years, which will per se disqualify you from withholding removal. Short of those things, though, it is up to the agency to define whether a crime is particularly serious, and in doing so, this Court and the Board have time and again said that no particular test is required, and exactly the sentence that you just quoted from Mustafik, I believe, that is exactly what this Court and the Board have said in the context of particular serious crime determinations because it is committed to the Attorney General's discretion. One of the problems is that the categorical method that we deal with on the statutory and sometimes guideline issues can produce very arbitrary results, and facts and circumstances can invite a kind of never-ending deep dive into details that may or may not be available. So there are frankly times when I wish we had a little more flexibility in some other contexts to evaluate the seriousness of crimes. Sure, and I appreciate that, Your Honor. I think none of this is to say, none of this is to hide behind what the Board did. I think the Board looked at some of the facts and circumstances, some of the most important ones, which is that there was no harm here. The Board recognized that, and that there was no weapon involved here. But that still, and this Court has said, and the Board relied on precedent from this Court, that the inherent danger of a robbery, even as opposed to burglary, is by itself enough to call a crime violent or dangerous. So let me ask you this. If the Attorney General, through whatever delegates she wants to use, were to find that somebody failed to show exceptional and extremely unusual hardship, is there any way that the other factors, once the extreme hardship has been shown, that other factors would counsel a favorable exercise of discretion? Certainly, Your Honor, and the regulation makes that clear. I mean, if you look at the way the regulation is meant to operate, 1212.7d says that the Attorney General, in general, will not favorably exercise discretion. Yeah, that's what I'm exploring, this in general. Right. Language. Right, and, you know, that's how it's meant to operate, so that you can fall short of that higher hardship standard and still get relief, and you can also establish. You might have other equities that would overpower the fact that. Correct, just as you can establish it and still not get relief, which is what the court did in Papazoglu, which this court upheld. So it is meant, it is one of many factors that applies. It applies in a way that does not dictate any outcome, but that certainly just suggests one more likely outcome. Can you think of any cases that have percolated up to a Presidential Board decision where that's happened? They haven't, Your Honor, and there's not, you know, it's certainly hard to find them at the circuit court level because. Any statistics on how often this discretion is exercised in favor of somebody who qualifies under the dangerous or violent? No, Your Honor, and I did try to find that. It's extremely difficult because of the way that these applications are processed. It's a sort of very broad brush that I can look up how many applications are filed. It doesn't even say on what basis of 212H, and certainly doesn't say what standards are applied. So I tried very hard, but I was not able to turn anything up in that regard. I would note again the particularly serious crime determination as a very helpful analogy, and as a last thing to get to Petitioner's argument about facts that were overlooked here. Again, I just cited Papa Zoglu. In that case, this Court rejected a very similar argument in nearly identical circumstances. The Board had rejected, under the higher hardship standard, the showing made by the alien. This Court specifically said that when the Board has referenced emotional hardship, the failure to specifically cite evidence of suicidal ideation and more severe psychiatric illnesses was not a failure to overlook material facts so much as a questioning the Board's ultimate exercise of its discretion. I agree with you that Papa Zoglu is very helpful to the Board's position in this case. On the other hand, the Champion decision looks pretty favorable to the Petitioner's case, and I was wondering if you or counsel for Petitioner can give us some more specific guidance as to how we tell the difference between cases where we have jurisdiction to decide whether sufficient consideration was given as a matter of law to certain evidence and when we don't have jurisdiction. Certainly, Your Honor. So there's, I think, two helpful ways to think of this, sort of two strands of how that might happen, and I'll start with the Board decision that Petitioner relied on and then get to Champion because I think the Board decision, a matter of velarde, is helpful for the strand of when you just don't say anything. And in that case, the applicant had filed a motion to reopen to establish that their marriage was bona fide for the purpose of adjusting status, and the Board said no and nothing else. No explanation, no reasons given, despite the fact that the motion to reopen was supported by evidence of the bona fides in the marriage. So that's one way in which the failure to consider, the failure to actually mention factors or give any analysis would rise to the level of a legal error. Now, Champion, which arose in this circuit, and then Saldana, which is the other case Petitioner cites, which arose in the Ninth Circuit, are good examples of where the Board says something but affirmatively makes an assumption that was ignored, or sorry, that was disputed by the record. So in Champion, for instance, the Petitioner, who was a mother, demonstrated hardship factors to her children. The Board relied on hardship to the children with the assumption that the father would be around to mitigate hardship. Made that assumption, totally ignored the fact that the father himself was very likely going to be removed. So there was an affirmative assumption that something was or was not going to happen that colored the Board's decision. Saldana, in many respects, in addition to arising not in this court, is even worse, because in that case, similar dynamic where the Petitioner was a mother and cited hardship to her children. The government in that case, unfortunately, had argued that the hardship would be offset by the fact that the father would be around, the natural father who was not a Petitioner in the case. And the father was deceased. And the court nor the Board never acknowledged it. And so that is what it takes for this court to determine that something is a legal error. Everything else, and if you look at the way Petitioner has raised that argument, they're asking for the Board or this court to reweigh the very, very discretion that the Board exercised here, and we think that would be inappropriate. If there are no further questions, Your Honor, we ask that the court deny this petition further. Thank you very much, Mr. Spady. Thank you. Anything further, Ms. Schaller? Yes, quickly, if you may. Yeah, you have about a minute. I have just two points I'd like to make. First, I think that for a violent and dangerous offender, a facts and circumstances analysis is very important for the reasons you've stated. There are some times where it may not be so offensive as others, and in this particular case the facts indicate there were perhaps some mitigating factors. Additionally, where the Attorney General has worked to create a heightened standard for that particular subset and disclaimed the extreme hardship standard, the factual analysis is all the more important. Second, I'd like to just dispute a little bit of how the Government Counsel characterized Papazoglou. I think in that case it did not hold that a generic incantation of extreme hardship has been shown here as enough. In that case, the court actually identified that the Board did in fact discuss the very factors that the petitioner had asserted were not actually in there, just maybe there was different language, I think was sort of how that had happened. And this case is much closer to Champion and also Iglesias. And in that case, the court wrote that had the Board at least mentioned the factors at issue on appeal, it could be confident that the Board considered it. The Board did not consider it here, and the court cannot be confident that it did. We ask the court to reverse and remand. Thank you. All right. Thank you very much. And did you accept this case by recruitment from the court? So we appreciate your assistance to your client and to the court. Thanks as well. So the government will take the case under advisement.